**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN PETROLEUM INSTITUTE, et al., | |
|     Plaintiffs, | |
|     v. | |
| U.S. SECURITIES AND EXCHANGE COMMISSION, | Civil Action No. 12-cv-1668 (JDB) |
|     Defendant, | |
| and | |
| OXFAM AMERICA, INC. | |
|     Proposed-Intervenor-Defendant. | |

**OXFAM AMERICA'S MOTION TO INTERVENE**
**AND SUPPORTING MEMORANDUM**

Pursuant to Federal Rule of Civil Procedure 24, Oxfam America, Inc. ("Oxfam"),

respectfully seeks to intervene as a defendant in this action challenging Section 1504 of the

Dodd-Frank Wall Street Reform and Consumer Protection Act (hereafter "Cardin-Lugar," after

the provision's sponsors), Pub. L. No. 111-203, 124 Stat. 1376, 2220-22, and the Securities and

Exchange Commission's ("SEC") implementing regulation.[1]

Cardin-Lugar mandates that the SEC require "resource extraction issuers" – publicly

traded oil, natural gas, and mining companies – to disclose payments made to governments

---

[1] This motion is substantially identical to Oxfam's unopposed Motion to Intervene in the parallel action in the Court of Appeals, *Am. Petroleum Inst. v. Securities and Exchange Commission*, No. 12-1398 (D.C. Cir.),  DN 1401477, which was granted on November 1, 2012.  *Id.*, DN 1402603. It is simply updated to take into account the current posture before this Court.

associated with the extraction of these natural resources.  The provision – and the SEC's

implementing regulation, 77 Fed. Reg. 56,365 (Sept. 12, 2012) (hereafter "Disclosure Rule") –

will provide vital information to investors such as Oxfam, while at the same time allowing

people in communities where these natural resources are found, and their international allies, to

hold governments accountable for natural resource revenues.

　　　As explained below, Oxfam is both an investor and a nonprofit international development

and relief organization.   Declaration of Paul O'Brien ("O'Brien Decl."), ¶¶ 1, 14.[2]  Oxfam's

interests as an investor, as well as its core organizational mission, would be impaired by the

relief Plaintiffs seek, which would deprive Oxfam of information to which it – and the public – is

statutorily entitled.  *Id.*, ¶¶ 2-19.

　　　Oxfam successfully intervened in the parallel action filed by Plaintiffs in the D.C. Circuit

challenging the same law and regulation.  Counsel for Oxfam contacted counsel for Plaintiffs

and Defendant regarding their position on this motion.  Although neither party opposed Oxfam's

participation as a party in that Court, here Plaintiffs and the SEC both consent to Oxfam

intervening as a party only to the extent that such participation is limited to consideration of

briefs filed in the D.C. Circuit, including Oxfam's brief filed there.  Oxfam, however, does not

agree that its rights as intervenor should be limited in this way.  By this motion, Oxfam seeks

intervention as of right and requests intervenor status with all the rights that such status entails.

In particular, Oxfam believes that limited supplemental briefing – in addition to consideration of

the D.C. Circuit briefs – may be appropriate and seeks to ensure that as an intervenor it may

move to amend the Court's Scheduling Order to permit any supplemental briefing that may be

appropriate.

---

[2] The Declaration of Paul O'Brien was originally submitted in the parallel action in the D.C.
Circuit and is resubmitted jointly with this Motion and Memorandum.

## BACKGROUND

**A.      Congress Passed Cardin-Lugar To Protect Investors And Foster International Accountability Concerning Resource Extraction  Payments.**

Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") in 2010, amending the Securities Exchange Act to improve corporate accountability and consumer protection.  Cardin-Lugar is a key component of the Exchange Act, mandating that the SEC require companies engaged in the commercial development of oil, natural gas, or minerals to publicly disclose "information relating to any payment made by the [company] for the purpose of the commercial development of oil, natural gas, or minerals . . . ." 15 U.S.C. § 78m(q)(2)(A).

Under Cardin-Lugar, the payments that must be disclosed include "taxes, royalties, fees (including license fees), production entitlements, bonuses, and other material benefits, that the Commission, consistent with the guidelines of the Extractive Industries Transparency Initiative ["EITI"] (to the extent practicable), determines are part of the commonly recognized revenue stream for the commercial development of oil, natural gas, or minerals." *Id.* at § 78m(q)(1)(C)(ii).[3]  Any such payment is to be disclosed so long as the payment is "made to further the commercial development of oil, natural gas, or minerals," unless such a payment qualifies as "*de minimis*." *Id.* at § 78m(q)(1)(C)(i).

The payment information that must be disclosed includes "the type and total amount of such payments made for each project of the resource extraction issuer relating to the commercial

---

[3]      The EITI, endorsed by the World Bank Group and supported by numerous countries, is a coalition of oil, natural gas, and mineral companies, governments, and other international organizations dedicated to fostering transparency and accountability in resource extraction payments.  77 Fed. Reg. at 56,366, n.14.

development of oil, natural gas, or minerals," as well as "the type and total amount of such payments made to each government." *Id.* at § 78m(q)(2)(A)(i)-(ii).[4]  The SEC is also required, "[t]o the extent practicable," to "make available online, to the public, a compilation of the information required to be submitted" under the Rule.  *Id.* at § 78m(q)(3).

Like other disclosure provisions of the Exchange Act, Cardin-Lugar informs and protects investors.[5]  The provision also reflects "the commitment of the Federal Government to international transparency promotion efforts relating to the commercial development of oil, natural gas, or minerals."  *Id.* at § 78m(q)(2)(E).[6]

---

[4]      Cardin-Lugar further directs that the SEC's implementing regulations require that "the information included in the annual report . . . be submitted in an interactive data format" – *i.e.*, include "electronic tags that identify, for any payments made by a" company: (a) "the total amount of the payments by category"; (b) "the currency used to make the payments"; (c) the financial period in which the payments were made"; (d) "the business segment of the [company] that made the payments"; (e) "the government that received the payments, and the country in which the government is located"; (f) "the project of the [company] to which the payments relate"; and (g) "such other information as" the SEC "may determine is necessary or appropriate in the public interest or for the protection of investors."  *Id.* § 78m(q)(2)(D)(ii).

[5]      *See, e.g.*, 156 Cong. Rec. S5870-02 (daily ed. July 15, 2010) (statement of Sen. Ben Cardin) ("[I]nvestors have a right to know. If you are going to invest in an oil company, you have a right to know where they are doing business, where they are making payments. . . . [T]his is information that may affect your decision as to whether you want to take this risk in investing in that company. So this amendment provides greater disclosure for investors to be able to make intelligent decisions as to whether to invest in an oil or gas or mineral company.").

[6]      Many resource-rich developing economies experience lower growth and far greater poverty than other countries, as profits from resource extraction are easily captured and often flow directly into the hands of corrupt governments in developing countries.  Therefore, the most resource-rich countries are often the least likely to successfully translate oil and mineral reserves into roads, schools, clinics, or improved living standards.  Instead, societies heavily dependent upon resource extraction usually have exceptionally low standards of living and unusually high rates of corruption, authoritarian government, ineffective governance, ethnic violence, and civil war. *See generally* Michael Ross, Oxfam America, *Extractive Sectors and the Poor* (2001), *available at* http://www.oxfamamerica.org/files/extractive-sectors-and-the-poor.pdf . Cardin-Lugar was also enacted to address this concern.  *See, e.g.,* 156 Cong. Rec. S3816 (daily ed. July 15, 2010) (statement of Sen. Richard Lugar) (in passing Cardin-Lugar "we are helping to

Cardin-Lugar requires the SEC to promulgate regulations implementing its requirements, directing that the agency, "[n]ot later than 270 days after" the law was passed (*i.e.*, by April 2011) "shall issue final rules that require each resource extraction issuer to include in an annual report of the resource extraction issuer" the information that Cardin-Lugar requires to be disclosed.  *Id.* at § 78m(q)(2)(A).

**B.   The SEC's Implementing Regulation Faithfully Carries Out The Mandate In Cardin-Lugar.**

In December 2011, the SEC issued its Proposed Rule to implement Cardin-Lugar.  75 Fed. Reg. 80,978 (Dec. 23, 2010).  The Proposed Rule closely conformed to the statute, tracking the statutory definitions of which payments must be disclosed and what information must be included.  *Id.*  The agency subsequently received and considered extensive public comments on all aspects of the Rule, considering all comments received.[7]

The SEC's Final Regulation – "Disclosure of Payments By Resource Extraction Issuers" (hereafter "Disclosure Rule") – was published in the Federal Register on September 12, 2012. 77 Fed. Reg. 56,365.  The Disclosure Rule closely tracks the precise language of Cardin-Lugar, in many respects adopting Cardin-Lugar almost word for word.  *Compare, e.g.*, 15 U.S.C. § 78m(q)(1)(A) *with* 77 Fed. Reg. at 56,417 (codified at 17 C.F.R. § 240.13q-1(b)(2)) (defining "commercial development of oil, natural gas, or mineral"); *compare* 15 U.S.C. § 78m(q)(1)(C)

alleviate poverty internationally by allowing the people of the countries that have mineral wealth to hold their officials accountable, to use those payments to help the people of that nation").

[7]      *See* http://www.sec.gov/comments/s7-42-10/s74210.shtml (website containing public comments on proposed rule).  After the SEC had long missed the statutory deadline, Oxfam filed a lawsuit under Section 706(1) of the Administrative Procedure Act ("APA") concerning the agency's unlawful delay.  *Oxfam Am. v. SEC*, No. 12-10878 (D. Mass., filed May 16, 2012).  In that suit,  SEC claimed that it had "not unlawfully withheld or unreasonably delayed the promulgation of a final rule," requesting that the court "deny that Oxfam is entitled to the relief requested or any relief whatsoever."  Answer of SEC at 7-8 (No. 12-10878, ECF No. 10).  The SEC and Oxfam filed a stipulation of dismissal, without prejudice, of the D. Mass action shortly after the SEC published the Final Regulation in September 2012.

*with* 77 Fed. Reg. at 56,418 (codified at 17 C.F.R. § 249b.400, Sec. 2, Item 2.01(c)(6)) (defining

"payment"); *compare* 15 U.S.C. § 78m(q)(2) *with* 77 Fed. Reg. at 56,418 (codified at 17 C.F.R.

§ 249b.400, Sec. 2, Item 2.01(a)) (defining reporting that is required).

In other respects, the SEC narrowed the scope of the Disclosure Rule in order to

accommodate concerns raised by the regulated industry.  For example, the SEC defined "*de*

*minimis*" as $100,000, exempting from any reporting requirements projects that do not meet this

threshold.  77 Fed. Reg. at 56,419.  The SEC also did not include payments associated with "the

removal of the resource from the place of extraction to the refinery, smelter, or first marketable

location," *id.* at 56,375, instead limiting the term "export" to removal outside of the country.

Marketing payments are also entirely excluded, as are transportation payments for any purposes

other than export.  *Id.* at 56,376.    Finally, while the Disclosure Rule – like Cardin-Lugar –

generally mandates disclosures on a project-by-project level, it permits companies to "disclose

payments at the entity level if the payment is made for obligations levied on the issuer at the

entity level rather than at the project level."  *Id.* at 56, 386.

In response to concerns about being required to report the information in their annual

reports, the SEC created a new form – Form SD – in which the disclosure information will be

provided.  *See* 77 Fed. Reg. at 56,296.  To allow companies sufficient time to collect the required

information, the Commission is not requiring the first reporting until 150 days after an issuer's

fiscal year ends, starting with the fiscal year that ends after September 30, 2013.  *Id.* at 56,365.

**C.      American Petroleum Institute's Lawsuits Challenging The Disclosure Rule**

On October 10, 2012, the American Petroleum Institute and others ("API") filed lawsuits

in this Court – where a stay was entered – and the D.C. Circuit, challenging both Section 1504

and the Final Rule.  Both the SEC and API took the position that the D.C. Circuit had original

jurisdiction.  Oxfam successfully intervened in that proceeding and explained that, in fact, original jurisdiction belongs in the district court.  On April 26, 2013, the D.C. Circuit agreed with Oxfam, dismissing the appeal on the grounds that it lacked subject matter jurisdiction.  *See Am. Petroleum Inst. v. SEC*, No. 12-1398, __ F.3d __, 2013 U.S. App. LEXIS 8477 (D.C. Cir. Apr. 26, 2013) ("*API I*").

Without consulting Oxfam, API and the SEC subsequently requested that this Court lift the stay, and resolve the suit expeditiously on the sole basis of the filings submitted to the D.C. Circuit.  *See* Expedited Joint Motion to Lift Stay ("Joint Motion"), DN 21 (May. 1, 2013).  The Court has granted that request.  *See* May 3, 2013, Scheduling Order (DN 23).  Oxfam seeks to intervene to participate in the proceedings in this Court, including to be heard regarding potential amendment to the recently entered Scheduling Order.

<u>**ARGUMENT**</u>

Fed. R. Civ. P. 24 provides that a person with an interest in the transaction that is the subject of an action may apply to intervene as a party in that action.  Oxfam satisfies the criteria for intervention, both as of right and on a permissive basis.

## I.   Oxfam's Interests

Oxfam is an international relief and development organization dedicated to finding lasting solutions to international poverty and related injustice.  O'Brien Decl., ¶ 1.  One of Oxfam's core missions is to advance resource revenue accountability by engaging with companies, governments, and international organizations, as well as local communities and civil society organizations, to promote responsible and accountable stewardship of these revenues.  *Id.*, ¶ 2.  Oxfam has spent more than $1 million dollars during 2011-12 on global initiatives related to extractive industry revenue transparency, including researching extractive industry

payment information in select countries; supporting civil society organizations and national level campaigns to improve these transparency efforts; and publishing reports concerning these issues. *Id.*, ¶¶ 5-10.

Oxfam has also been a leader in the campaign to enact mandatory extractive payment disclosure legislation in the United States, and has actively participated in the Cardin-Lugar rulemaking process. *Id.* Oxfam also owns securities in several resource extraction issuers subject to the Disclosure Rule. *Id.*, ¶ 14. Oxfam will use the Cardin-Lugar disclosures to better assess investment risks in these companies. *Id.* As an active shareholder, Oxfam will also use the information to inform its participation in the governance of these companies. *Id.*, ¶ 14-16.

## II. Oxfam Should Be Permitted To Intervene As Of Right.

Oxfam may intervene as of right because its motion is timely, it has a legally protected interest at stake that satisfies the requirements of Article III standing, and the SEC will not adequately protect that interest on behalf of Oxfam. *See* Fed. R. Civ. P. 24(a); *e.g.*, *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008).

### A. Oxfam Is Entitled To Protect Its Interests In The Disclosure Mandate Of Cardin-Lugar And The SEC's Disclosure Rule.[8]

In this Circuit, the interests required for intervention are co-extensive with the interests that must be demonstrated to satisfy Article III standing. *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998); *see also Fund for Animals v. Norton*, 322 F.3d 728, 732-33 (D.C. Cir. 2003). Here, Oxfam meets all the prerequisites for Article III standing – *i.e.*, injury in

---

[8]     Oxfam's motion is plainly timely; this is Oxfam's first opportunity to intervene because the lawsuit in this court has been stayed since shortly after it was filed. *Am. Forest Res. Council v. Hall*, No. 07-484 (JDB), 2007 WL 1576328 (D.D.C. May 29, 2007); *Karsner*, 532 F.3d at 886; *Fund for Animals v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003). Moreover, Oxfam successfully intervened in the D.C. Circuit, pursuing its interests in a timely manner while the existing parties claimed that this suit belonged in that Court. This criteria is therefore satisfied here.

fact, causation, and redressability, *see, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) – by virtue of both: (a) the informational injury it will suffer should Plaintiffs prevail, and (b) the resource and economic injury at stake in light of Oxfam's role as an investor, and in light of the significant resources Oxfam expends trying to obtain from other sources the information the Disclosure Rule will require companies to affirmatively disclose.  O'Brien Decl., ¶¶ 5-19.

### 1.    Plaintiffs' Challenge Risks Informational Injury To Oxfam, Impairing Its Mission And Profitability.

As the Supreme Court has explained, a "plaintiff suffers an 'injury-in-fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *FEC v. Akins*, 524 U.S. 11, 21 (1998); *see also Pub. Citizen v. DOJ*, 491 U.S. 440, 448-51 (1989); *ASCPA v. Feld Entm't., Inc.*, 659 F.3d 13, 22 (D.C. Cir. 2011) ("Following *Akins*, we have recognized that a denial of access to information can work an 'injury in fact' for standing purposes, at least where a statute (on the claimants' reading) requires that the information be publicly disclosed and there is no reason to doubt their claim that the information would help them.") (citations omitted); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 583 F.3d 871, 873-74 (D.C. Cir. 2009).  Here, similar to other disclosure mandates, such as those contained in the Freedom of Information Act, 5 U.S.C. § 552, *et seq*., Cardin-Lugar and the Disclosure Rule require companies to publicly disclose information – *i.e.,* payments made to governments associated with the commercial development of oil, natural gas, and minerals.  In light of Oxfam's statutory right to this information under Cardin-Lugar, and the concrete uses to which Oxfam would put this information, the relief sought by Plaintiffs, which would deny Oxfam this information, plainly gives rise to the requisite injury-in-fact.

Oxfam owns securities of several resource extraction issuers that are subject to the Disclosure Rule.  O'Brien Decl. ¶ 14.   The disclosures will allow Oxfam to assess risks

associated with these and other issuers' payments to governments, and to make investment and divestment decisions pursuant to its goals as an investor. *Id.* Oxfam will carefully review disclosures by such issuers for indications of investment risk reflected in otherwise undisclosed patterns of payments. *Id.*; *see also*, *e.g.*, 77 Fed. Reg. at 56,398 ("the new disclosure requirements would help investors assess the risks faced by resource extraction issuers operating in resource rich countries"); *id.* at 56,399 ("To the extent that the required disclosures will help investors in pricing the securities of the issuers subject to the [Disclosure Rule], the rules could improve informational efficiency.").

Oxfam is also an engaged and active shareholder, and the information disclosed pursuant to the Disclosure Rule will inform Oxfam's participation in the governance of companies it owns, including, without limitation, introduction of shareholder resolutions by Oxfam, as well as votes cast as a shareholder. O'Brien Decl. ¶¶ 15-16. Without the disclosures mandated by Cardin-Lugar, Oxfam would be hindered in carrying out its goal of active participation in corporate governance as an informed and educated shareholder. *Id.*

Plaintiffs are the direct cause of Oxfam's informational injury, as they seek to foreclose the public disclosure of information to which Oxfam is statutorily entitled. Oxfam would receive the information to which it has a statutory right if the Court were to deny Plaintiffs' challenge. Thus Oxfam has Article III standing, and the requisite interest, to intervene. *See also*, *e.g.*, *Shays v. FEC*, 528 F.3d 914, 923 (D.C. Cir. 2008) ("Shay's injury in fact is the denial of information he believes the law entitles him to").[9]

---

[9]    In this respect, the nature of Plaintiffs' challenge is noteworthy. Not only do Plaintiffs seek to overturn the Disclosure Rule; they also claim that Cardin-Lugar violates their First Amendment rights. If successful, this challenge would not only force the SEC to reconsider and narrow the Disclosure Rule, but would foreclose the government from requiring *any* such disclosure.

### 2.   Plaintiffs' Challenge Also Threatens To Reduce And Otherwise Divert Oxfam's Financial Resources.

Because the disclosures required by Cardin-Lugar will also make certain extractive companies more profitable in the long-term, Oxfam also satisfies Article III standing requirements – and thus the requisite "interest" for intervention – by virtue of its status as an investor in this regard.  O'Brien Decl. ¶ 14; 77 Fed. Reg. at 56,399 (noting comment that disclosures will "promote capital formation by reducing information asymmetry and providing more security and certainty to investors as to extractive companies' levels of risk exposure").[10]

However, even more concretely, the Disclosure Rule will impact Oxfam's need to spend over one million dollars yearly to promote resource revenue accountability and obtain the information that the Disclosure Rule requires issuers to affirmatively disclose.  O'Brien Decl. ¶¶ 6-13.  Oxfam's expenditures include supporting local civil society coalitions, engaging in direct public advocacy, and researching the status of natural resource revenues in countries such as Ghana, Mali, and Peru.  *Id.*   Because the Disclosure Rule mandated by Cardin-Lugar will require the public disclosure of much of the information Oxfam seeks through its advocacy work, Oxfam will be able to reduce the resources it has diverted to achieving resource revenue

---

[10]     Oxfam's status as an investor plainly satisfies Article III.  *E.g., Stilwell v. Office of Thrift Supervision*, 569 F.3d 514, 518 (D.C. Cir. 2009).  In *Stilwell*, the agency contested an investor's right to challenge a regulation that related to the activities of "mutual holding company subsidiaries, not investors." *Id.* at 518.  Although Stilwell was not the object of the regulation, the Court concluded that he had standing because of the "substantial probability" that the regulation would "harm [his] economic interests . . . ." *Id.*   Similarly, here, given that the relief Plaintiffs seek – the vacatur of Cardin-Lugar and the Disclosure Rule – will concretely impact Oxfam's economic interest as an investor in companies covered by the Rule, Oxfam has standing.  *See also Chamber of Commerce v. SEC*, 412 F.3d 133, 138 (D.C. Cir. 2005) (finding the Chamber of Commerce had standing to challenge an SEC regulation "because it would like to invest in shares of funds that may engage in transactions regulated by" the rules at issue).

disclosures and use them instead for other activities to alleviate poverty and combat the resource curse.  *Id.*

This resource injury fully supports Article III standing, as the Supreme Court has explained, *see*, *e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982), and this Court has reaffirmed in many cases.  *Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136 (D.C. Cir. 2011); *Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 133 (D.C. Cir. 2006); *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990) ("*Havens* makes clear, however, that an organization establishes Article III injury if it alleges that purportedly illegal action increases the resources the group must devote to programs independent of its suit challenging the action.").

Oxfam will, without limitation, use these disclosures to inform, educate, and train stakeholders from government, the private sector, civil society, and communities affected by extractive resource development in the transparent and accountable management of extractive resource revenues derived from projects in their countries and communities.  O'Brien Decl.  ¶¶ 6-13.  Until Cardin-Lugar disclosures become available, however, resources that would be marshaled to undertake these activities are instead being diverted to advocating for revenue transparency and seeking the information through other means.  *Id.*  Thus, public disclosure of extractive issuers' payments to governments will concretely impact Oxfam's resources by freeing them for other uses.[11]

---

[11]     As with informational injury, Oxfam need not demonstrate that upholding the Disclosure Rule will fully ameliorate this injury, only that it will aid in doing so.  *See*, *e.g.*, *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (parties satisfy the redressability requirement when they show that a favorable decision will relieve some of their injuries, and "need not show [it] will relieve [ ] *every* injury") (emphasis in original); *accord Meese v. Keene*, 481 U.S. 465, 476 (1987).

Plaintiffs are the direct cause of Oxfam's resource injury, as Oxfam will be required to divert resources as described *supra* at 10-11 only if Plaintiffs' challenge to Cardin-Lugar and the Disclosure Rule succeeds.  This Court would redress Oxfam's injury by denying Plaintiffs' challenge, thereby ensuring disclosures that will profit Oxfam and enable it to free resources for other uses.

**B.     The SEC Will Not Adequately Protect Oxfam's Interests.**

As regards the existing representation here, Oxfam will not be adequately represented by the SEC.  As a threshold matter, it is critical to emphasize that, especially in this Circuit, demonstrating the inadequacy of existing representation "is not onerous."  *Dimond v. Dist. of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986).  Rather, "[t]he requirement of [Rule 24] is satisfied if the applicant shows that representation of his interest 'may be' inadequate," and "the burden of making that showing should be treated as minimal."  *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Fund for Animals*, 322 F.3d at 735 (an applicant "'ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee'") (quoting 7A Wright & Miller, Fed. Practice & Proc. § 1909 (1st ed. 1972)).

Applying those principles here, it is evident that the SEC may not adequately represent Oxfam's interests.  Indeed, although Congress mandated that the Cardin-Lugar regulation be issued by April 2011, it was not until Oxfam filed suit against the SEC and moved for summary judgment that the agency finally came into compliance with that mandate.  *See supra* at 4, n.7. Particularly where a regulation is the result of prior litigation, courts have generally allowed a prior plaintiff to intervene to defend the regulation, satisfied that the agency may not adequately represent the interests of its former adversary.  *See, e.g., Safari Club Int'l. v. Salazar*, 281 F.R.D.

32, 42 (D.D.C. 2012) (while intervenors are "clearly aligned with the Federal Defendants in this action, they have a legitimate basis for concern over the adequacy of the representation of their interests, in view of the prior lengthy litigation by these proposed intervenors against the" agency); *accord Coal. of Arizona/New Mexico Counties for Stable Economic Growth v. Dep't of the Interior*, 100 F.3d 837, 844-46 (10th Cir. 1996).

The interests asserted by the applicants also "need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate." *Nuesse v. Camp*, 385 F.2d 694, 703 (D.C. Cir. 1967). Rather, because the intervenor may "mak[e] a more vigorous presentation" of certain arguments "than federal officials who, by all appearances, adopted the regulation reluctantly and only because they were compelled to do so," courts have found intervention appropriate in these circumstances. *E.g., Natural Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) (intervention appropriate despite "shared general agreement" between the government and the applicants).

In fact, SEC's interests may well not be completely aligned with Oxfam's. First, the Exchange Act charges the SEC with [defending] the interests of investors and issuers alike, 15 U.S.C. § 78b, and it may not zealously defend the interests of public interest investors like Oxfam. *See, e.g., Norton*, 322 F.3d at 737 (government parties often "do not adequately represent the interests of aspiring intervenors" because intervenors may represent "'a more narrow and "parochial" financial interest,'" which the government party may not advance "'at the expense of its representation of the general public interest'") (quoting *Dimond*, 792 F.2d at 192-93).

Second, the SEC may consider itself foreclosed from making certain arguments that Oxfam would make and did make in the D.C. Circuit Court, or it may not advance such

arguments with similar vigor.  For example, Oxfam's argument that the Court of Appeals lacked jurisdiction over the Petition for Review in the parallel case, which both the SEC and Petitioners opposed, was dispositive in that action, and would not have been heard if Oxfam had not been in a position to raise it. *API I*, 2013 U.S. App. LEXIS 8477 at * 6-7.

Third, the SEC's conduct in this action has already demonstrated that it does not represent Oxfam's interests adequately.  Despite having consented to Oxfam's intervention in the Court of Appeals, and knowing Oxfam's likely interest in intervening in front of this Court, the SEC did not consult Oxfam before submitting its Joint Motion with Plaintiffs.  As noted above, Oxfam believes that the Scheduling Order that was entered pursuant to the Joint Petition may warrant some modification in order to ensure that the Court hears all relevant arguments.  Accordingly, Oxfam satisfies this aspect of the intervention test as well.

**III.    Alternatively, Oxfam Should Be Granted Permissive Intervention.**

In the event the Court determines that Oxfam does not qualify for intervention of right, alternatively the Court should exercise its discretion by allowing Oxfam to intervene as a permissive matter.  *See* Fed. R. Civ. P. 24(b) (permitting courts to grant intervention to anyone who "has a claim or defense that shares with the main action a common question of law or fact," after considering "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights"); *see also Nuesse*, 385 F.2d at 704 ("Rule 24(b) . . . provides basically that anyone may be permitted to intervene if his claim and the main claim have a common question of law or fact").  "As its name would suggest, permissive intervention is an inherently discretionary enterprise," *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998), and hence courts have "wide latitude" in determining whether to grant such status.  *Id.*

Here, where Oxfam plainly seeks to pursue "question[s] of law or fact in common" with the existing parties by intervening to defend the Disclosure Rule, for which it has advocated, permissive intervention at the very least is appropriate.  Oxfam's participation as a party will not prejudice either the SEC or Plaintiffs, as Oxfam is intervening at the very beginning of the proceedings, and its participation would not in any way prevent any party from fully airing its positions.

Rather than causing any prejudice, Oxfam's participation would contribute to a fuller development of the factual and legal issues because, as noted *supra*, Oxfam may be in a position to make legal arguments that SEC may not.  This includes the implications of, for example, Plaintiffs request a stay of the Disclosure Rule as they did at the outset of this litigation, or seek a preliminary injunction from this court, as they suggest they may do in their complaint. *See* Complaint ¶ 125(f), DN 1 (Oct. 10, 2012).  While any such relief would directly implicate Oxfam's rights and interests, O'Brien Decl. ¶¶ 17-19, the Court may not have the benefit of a full briefing on this issue, including the serious adverse impacts of such a stay, *id.*, if Oxfam is not permitted to participate.

## CONCLUSION

For all of the foregoing reasons, Oxfam's Motion to Intervene should be granted.[12]

Respectfully submitted,

*/s/ Howard M. Crystal*

---

[12]     Local Rule 7(j) requires a prospective intervenor to file a pleading setting forth the claim or defense for which intervention is sought.  However, given the existing parties' proposal that the SEC be relieved of the obligation to file an Answer to the Complaint, *see* Memorandum in Support of Expedited Joint Motion at 6, Oxfam similarly requests relief from that obligation, or alternatively requests leave to file an Answer at a later date.  *See Mass. v. Microsoft Corp.*, 373 F.3d 1199, 1236, n.19 (D.C. Cir. 2004) (allowing intervention without a responsive pleading, and explaining that this requirement is not rigorously enforced by courts).

Howard M. Crystal
Meyer Glitzenstein & Crystal
1601 Conn. Ave., N.W. Suite 700
Washington, DC 20009-1056
Direct: 202-588-5206
hcrystal@meyerglitz.com
Fax: 202-588-5049

*/s/ Jonathan Kaufman* _____
Jonathan Kaufman
Marco Simons
EARTHRIGHTS INTERNATIONAL
1612 K St. NW Suite 401
Washington, DC 20009
Phone: 202-466-5188 x103
Fax: 202-466-5189
marco@earthrights.org

*Counsel for Oxfam America*

Of counsel:

Richard Herz
rick@earthrights.org
EARTHRIGHTS INTERNATIONAL
1612 K St. NW Suite 401
Washington, DC 20009
Phone: 202-466-5188
Fax: 202-466-5189

Richard J. Rosensweig
rrosensweig@goulstonstorrs.com
Derek B. Domian
ddomian@goulstonstorrs.com
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, MA 02110-3333
T: (617) 482-1776
F: (617) 574-4112

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of May, 2013, pursuant to the Court's General Information & Civil Filing Procedures II.F.2.b, I filed the foregoing Motion To Intervene, with the clerk of the Court for the United States Court of Appeals for the D.C. Circuit by electronic mail to the following address: dcd_cmecf@dcd.uscourts.gov.

*/s/ Jonathan Kaufman*